JAMES M. GRIFFIN *vs.* A. D. CURRAN & another.

Suffolk. December 12, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.

If a coal trimmer while going down a ladder in the hatchway of a vessel is injured by a barrow of coal being dumped upon him through the negligence of a fellow workman, who has been selected by the superintendent in charge to see that each man is safely down before any coal is dumped into the hatch, he cannot recover from their common employer.

At the trial of an action by a coal trimmer against his employer, a stevedore engaged in loading a certain vessel with coal, for injuries from a barrow of coal being dumped upon him as he was going down a ladder in the fore hatchway of the vessel, it appeared that the plaintiff was one of a gang of twenty or twenty-two men employed by the defendant under the charge of a superintendent, and that the vessel was being loaded at both the forward and the after hatch which were about forty feet apart. The plaintiff contended that the superintendent ordered the wheelman who dumped the coal on him to dump it when he did. The plaintiff testified that before he started to go down the ladder from the hurricane deck this wheelman spoke to him and that at that time the superintendent was near the after hatch where he could see and be seen by this wheelman but that the plaintiff "was not in plain sight" of him. The wheelman testified that before he emptied the barrow one of the boys (not the superintendent for he knew the superintendent's voice and the voice was not

his) called out "Come on with the coal." The plaintiff called another wheelman, who was at the after hatch, a trimmer who was waiting to follow the plaintiff down the ladder of the fore hatch, another workman at the fore hatch and still another who was at the after hatch, and each of them testified that he did not give this order. No witness testified that the superintendent gave it. The plaintiff did not call all the men who appeared by the evidence to have been on the hurricane deck at the time. *Held*, that, assuming that the words were an order and that the order was given to the wheelman at the fore hatch and not to the wheelman at the after hatch, the evidence did not warrant a finding that the superintendent gave it.

LORING, J. This case comes up on an exception to a ruling directing a verdict for the defendant on the plaintiff's evidence.

The action was brought by a coal trimmer for injuries received from a barrow of coal being dumped on him as he was going down a ladder in the fore hatch of the Admiral Farragut on October 13, 1903. The defendants, in whose employ the plaintiff then was, were engaged in loading the Farragut with coal. The ground on which the plaintiff seeks to charge the defendants is negligence of a superintendent within the employers' liability act.

The coal was in a lighter alongside the Farragut, and was hoisted up from the lighter in a tub which was emptied into a barrow on a run. The run in question was some thirty feet long, with one end over the lighter and the other end over the Farragut's fore hatch. It is the duty of the wheelman to empty the coal into the barrow, and when the barrow is full, to run the barrow to the end of the run close to the dump stick, knock the catch and dump the coal.

The plaintiff was in a gang of twenty or twenty-two men, with one Wren in charge, who was or might be found to be a superintendent. The Farragut was being loaded in the way just described, at both a forward and an after hatch. There was a wheelman on the stage or run of each hatch and eight trimmers for each hatch, four for each side of the ship.

The men knocked off work for half an hour at half past three o'clock in the afternoon to get something to eat. The plaintiff stayed on the ship and ate his meal by the after hatch on the main deck. There were three decks, the lower deck, the main deck and the hurricane or upper deck. When the half hour's rest came to an end Wren gave the word for the men to go to work. The plaintiff went up a stairway to the hurricane deck; then past

the after hatch over the hurricane deck to the fore hatch, a distance of some forty feet, passed under the run or staging which is some two to four feet above the coaming of the hatch, and started down the ladder on the port side of that hatch. This ladder had eleven rungs about a foot apart. He testified that before he got to the bottom the barrow of coal in question was dumped on him.

As the plaintiff went up the stairway from the main deck near the after hatch, he passed Wren, who was "right at the stairway." As he passed under the run or staging of the fore hatch he saw and spoke to Crowder, the wheelman on that run. He testified that Crowder asked him what side of the ship he was working on and told him to hurry and get down. Crowder's testimony is different, but the difference is not material. The plaintiff testified that at this time Wren was near the after hatch, where he could see and be seen by Crowder, but that he, the plaintiff, "was not in plain sight" of him, Wren.

The plaintiff undertook to prove a certain custom by which Wren looked out to see that each man was safely down before any coal was dumped into the hatches. On cross-examination he testified that Wren did this personally or selected some one else to do it; on being pressed further he testified that "many times he selected the wheeler." The overwhelming weight of the evidence was that there was no such custom, but it cannot be said that there was no evidence of such a custom. If there was, it is plain that in those cases where the time to begin dumping coal was left to the wheeler or other employee it was left to a fellow servant, and for the negligence of a fellow servant the defendant is not liable.

The plaintiff knew that the time for beginning to dump coal was left by Wren in the case at bar to Crowder, the wheeler. Wren was thirty or forty feet away at the time, and appeared to be otherwise engaged. The plaintiff testified that he "stood at the after hatch with a book in his left hand and a pencil in his right"; that he knew that Wren had told Crowder the wheeler not to dump coal on men going down a hatch, and that he relied on Crowder's obeying those orders.

In addition the plaintiff undertook to go to the jury on the ground that Wren ordered Crowder to begin dumping coal on

the occasion in question.   Crowder testified that one of the boys (not Wren, for he knew Wren's voice and the voice was not Wren's voice) called out " Come on with the coal," before he emptied the barrow in question.   The plaintiff called one Harold, who was the wheelman on the after stage, one Eastman, who was waiting to follow the plaintiff down the ladder, one Surree, who was at the fore hatch, and one Thomas, who was at the after hatch.   Each testified that he did not give this order.   No witness testified that Wren gave it.   The plaintiff did not call all the men who appeared from the evidence to be on the hurricane deck at the time.   This evidence did not warrant the jury in finding that it was Wren who gave the order, if it was an order, and if it was given to Crowder on the fore hatch and not to Harold at the after hatch.

*Exceptions overruled.*

*J. E. Young*, for the plaintiff.
*C. S. Knowles*, for the defendants.